<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| POWER SURVEY, LLC, | : | Civil Case No. 13-5670 |
| | : | (FSH) (JBC) |
| Plaintiff, | : | |
| | : | **OPINION & ORDER** |
| v. | : | |
| | : | |
| PREMIER UTILITY SERVICES, LLC, et al., | : | February 18, 2015 |
| | : | |
| Defendants. | : | |

**<u>HOCHBERG, District Judge:</u>**

This matter comes before the Court upon a motion to reconsider this Court's November 14, 2014, Order granting a motion for a preliminary injunction. The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

Plaintiff Power Survey moved for a preliminary injunction, seeking to enjoin Defendants Premier Utility Services, LLC and L-3 Communications Holdings, Inc. d/b/a Narda Safety Test Solutions (hereinafter "Narda") from infringing several patents. Power Survey holds three issued patents in the United States Patent and Trademark Office (PTO) relating to methods and systems for detecting contact or stray voltage, including U.S. Patent Nos. 8,482,274, 8,536,856, and 8,598,864. Plaintiff asserts that Defendants' use of Narda Models 8950/10 and 8950/20 infringes claims 1, 2, and 8 of the '274 patent. Claim 1 of the '274 patent states:

1

> 1. A mobile apparatus mounted to a motor vehicle for detecting an electric field, comprising:
>
> at least one sensor probe, coupled to an electrically non-interfering support frame mounted to the vehicle, that generates a signal corresponding to an electric field detected by the at least one sensor probe as the sensor probe moves past a plurality of conductive objects proximate a street, wherein the at least one sensor probe comprises two or more electrodes, and wherein the two or more electrodes are each separated by a rigid insulator;
>
> a processor, coupled to the at least one sensor probe, that digitizes the signal to form electric field data represented as a plurality of time domain samples, produces field strengths of each of the at least one sensor probes using the plurality of time domain samples, and analyzes the field strengths to identify a line frequency voltage anomaly in the electric field, wherein the electric field data is analyzed based on an expected frequency pertaining to the line frequency voltage anomaly and wherein the voltage anomaly is generated by leakage of electric power from a power grid to at least one energized object in the plurality of conductive objects proximate the street; and
>
> an indicator, coupled to the processor, that alerts a user to a presence of the voltage anomaly in the electric field and indicates that at least one conductive object proximate the street is energized to a potentially harmful level.

Dependent claims 2 and 8 add the limitations: an "analog to digital converter . . . for digitizing electric signals" and a "graphical user interface that displays electric field signal strength data."

The Court held a preliminary injunction hearing on September 4, 2014, wherein Dr. David Fugate, an electrical engineer, testified regarding the presence of each claim element in Narda's systems; inventor David Kalokitis testified regarding the manner in which Power Survey's device detects stray voltage; and Power Survey Chief Executive Officer Thomas Catanese testified to its loss of market share after stray-voltage detection services were offered using the Narda system. Defendants' primary argument to this Court was a claim construction

argument, which if adopted by this Court would purportedly lead to a ruling that the Defendants did not infringe. Their secondary argument, that the patents were purportedly invalid, consisted of five pages of briefing. All of the aforementioned witnesses testified for Plaintiff; Defendant called no witnesses on invalidity or any other issue.

The Court preliminarily construed the sole disputed claim term "voltage anomaly" to mean "detecting an electric field above a baseline threshold" and then applied the four-factor test for analyzing a preliminary injunction: (1) the likelihood of Plaintiff's success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In its November 21, 2014, Order, the Court found that Plaintiffs had demonstrated a likelihood of success in proving that Defendants' use of the Narda devices infringed claims 1, 2, and 8 of the '274 patent. *Power Survey, LLC v. Premier Util. Servs., LLC*, Civ. No. 13-5670, 2014 WL 6611518, at *3 (D.N.J. Nov. 21, 2014). The Court also found that the evidence adduced at the hearing did not raise a "substantial question concerning . . . validity" on the basis of obviousness or inventorship challenges. *Id.* Regarding irreparable harm, the Court found evidence that Power Survey suffered price erosion and loss of market share for its only product based on Defendants' ability to undercut the market with a cheaper, likely inferior product. Balancing the equities and considering the public interest, the Court found that the evidence of error rates using Narda's device likely exposed the public to additional risk in detecting potentially harmful electrical charges. Considering the four factors, the expert and witness testimony, and the available documentary evidence, the Court found that Plaintiff had demonstrated a clear showing of the need for injunctive relief and granted the motion for a preliminary injunction.

On November 26, 2014, several weeks after this Court had held an evidentiary hearing and a week after it had issued its Opinion and Order, the Patent Trial and Appeal Board of the Patent and Trademark Office initiated *inter partes* review over all claims of the challenged patents. Defendants had filed six *inter partes* review petitions, all relating to the same patents, each with different contentions and combinations of prior art references. The PTAB granted some of Defendants' six requests for initiation of *inter partes* review based on the assertion of obviousness premised upon a combination of the *Thomas Reference,* the EFA-300 Manual—described as an instructional book distributed to customers regarding use of the prior art EFA-300 sensor—and other references. Defendants thereupon moved for reconsideration of this Court's Preliminary Injunction Order based on their claim of "newly discovered" or "overlooked" evidence: Defendants contended that the PTAB's initiation of *inter partes* review is "newly discovered evidence."

Local Civil Rule 7.1(i) governs motions for reconsideration. *Bowers v. Nat'l. Collegiate Athletics Ass'n*., 130 F. Supp. 2d 610, 612 (D.N.J. 2001); *see NL Indus., Inc. v. Commercial Union Ins.*, 935 F. Supp. 513, 515 (D.N.J. 1996). Reconsideration is to be granted only sparingly. *See United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994).

The parties agree that this motion should be analyzed under the standard set forth in *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Under this standard, the movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citing *N. River Ins. Co. v. CIGNA Reinsurance Co*., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal

4

issue that may alter the disposition of the matter. *See United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999); *see also* L.Civ.R. 7.1(i); *Dunn v. Reed Group*, 2010 WL 174861, at *1 (D.N.J. Jan. 13, 2010). Local Civil Rule 7.1(i) creates a specific procedure by which a party may ask the court to take a second look at any decision "upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. The word 'overlooked' is the operative term in the Rule." *Bowers*, 130 F. Supp. 2d at 612 (citation omitted); *see also Compaction Sys. Corp.*, 88 F. Supp. 2d at 345.

Ordinarily, a motion for reconsideration addresses either: (1) those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue, *see SPIRG v. Monsanto Co.*, 727 F. Supp. 876, 878 (D.N.J. 1989), *aff'd*, 891 F.2d 283 (3d Cir. 1989); or (2) new evidence that was unavailable or unknown at the original hearing. *See Levinson v. Regal Ware, Inc.*, Civ. No. 89-1298, 1989 WL 205724, at *3 (D.N.J. Dec. 1, 1989). Reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. *Bowers*, 130 F. Supp. 2d at 613; *Resorts Int'l. v. Greate Bay Hotel and Casino, Inc.*, 830 F. Supp. 826, 831 & n. 3 (D.N.J. 1992); *Egloff v. N.J. Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Moreover, L.Civ.R. 7.1(i) does not allow parties to restate arguments which the court has already considered. *See G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. *Bowers*, 130 F. Supp. 2d at 612 (citations omitted); *Florham Park Chevron, Inc. v. Chevron U.S.A.*, Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); *see also Chicosky v. Presbyterian Medical Ctr.*, 979 F. Supp. 316, 318 (D.N.J. 1997); *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or

present evidence that could have been raised prior to the entry of judgment."). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tishcio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

Prescinding from the question of whether another entity's preliminary ruling is actually "evidence," it is fair to say that the PTAB's initiation of proceedings was not known at the time of the Court's decision.[1] However, the factual evidence upon which Defendants' *inter partes* petition was premised certainly was known and available. In fact, in response to this Court's specific question, Defendants acknowledged the precise prior art, which formed the basis of their *inter partes* review petitions, during the evidentiary hearing before this Court, but explicitly disclaimed reliance upon it for the purposes of opposing the preliminary injunction motion. Thus, this Court had no opportunity to hear testimony or argument about that evidence, nor did their adversary have an opportunity to challenge and rebut whatever that testimony might have been. Yet, that was the purpose of affording the parties an evidentiary hearing: to put evidence before the Court and allow the adversarial process to test the value of that evidence.

At the District Court hearing, Defendants argued primarily for a *Markman* ruling in their favor, and secondarily, that the asserted claims were rendered obvious based on a combination of the *Thomas Reference* and a machine called the EFA-300 sensor, which was described as an electrical field sensor. By contrast, Defendants' petition was sought, and granted by the PTAB, based in large part on the diagrams and other information in the EFA-300 Manual. For undisclosed strategy reasons, reliance on the EFA-300 Manual was explicitly and specifically

---

[1] As a matter of comity, it is not known whether this Court's decision and the transcript of its evidentiary hearing were made known to the PTAB before its initiation of an IPR. However, that fact is not dispositive here.

6

disclaimed as a ground for opposing the preliminary injunction in the District Court hearing, despite this Court specifically asking about it:

> [DEFENDANTS' COUNSEL] [W]e have a likelihood of success of proving both anticipation and obviousness based on this EFA device and a user manual based on that EFA device, along with other art. But pertinent today is just this EFA device.
>
> THE COURT: Okay. There's a user manual, you don't care about the user manual?
>
> [DEFENDANTS' COUNSEL]: For purposes of this, just this device.
>
> (*Markman* Tr. 71:10-19).

That colloquy tells the Court not to consider that potential piece of evidence, and it tells the other side not to ask witnesses questions about it during the hearing. It is not "new evidence," but rather evidence deemed insufficiently important to present to this Court. Indeed, the PTAB may also have been unaware that the EFA-300 Manual was deemed insufficiently important by Defendants to be asserted in opposition to the preliminary injunction motion in District Court. Yet that same EFA-300 Manual was argued to the PTAB in support of an *inter partes* review petition based on alleged obviousness of the combined references. The EFA-300 Manual was heavily relied upon in the PTAB's preliminary ruling, where it cited diagrams apparently contained in the EFA-300 Manual as suggesting certain elements of the claim. *L-3 Commc'ns Holdings, Inc. & Premier Util. Servs., LLC*, IPR2014-00834, 2014 WL 6706556, at *8-9 (Patent Tr. & App. Bd. Nov. 26, 2014) (citing EFA-300 Manual §§ 3.4, 5.1, 6.1.4, 7.2, 8.1, 12.1).

In the evidentiary hearing before this Court, counsel argued that the EFA-300 machine— the sensor itself—was capable of analyzing electric field strengths and detecting a voltage anomaly. For this proposition, however, Defendants called no witnesses and disclaimed reliance upon the EFA-300 Manual. Nor was any argument made in briefing or at oral argument

7

regarding the graphical user interface element. Nor did Defendants present evidence through lay or expert witnesses that there was a motive to combine the EFA-300 sensor with the diagram in the *Thomas Reference*, or that such combination would be expected to succeed in detecting stray voltage proximate to a street or road.

Yet we now learn that a whole host of arguments and expert declarations were submitted to the PTAB with Defendants' six *inter partes* review petitions, presenting a potential 360 pages of briefing to the PTAB to suggest a cornucopia of possible references, combinations, and legal theories. *See* 37 C.F.R. § 42.24(a)(1)(i).

Defendants, represented by eminently skilled and experienced patent counsel, made a strategic decision to assert only certain prior art evidence and no witness testimony, expert or lay, before this Court to oppose the motion for preliminary injunction. And they did so knowingly, stating in their brief that other prior art, including the "prior-art EFA-300 Operating Manual publication[,] will be the primary basis for Defendants' petitions for *inter partes* review." (Narda's Opp'n to Pl.'s Mot. for Prelim. Inj. 14). Defendant's expert in the *inter partes* petition, Dr. Olsen, was never called as a witness at this Court's evidentiary hearing, on the stated ground that counsel did not want to call him to avoid a "battle of the experts," despite reliance on his certification to the PTAB in their petition. (*Markman* Tr. 85:22-86:5). Merely attaching his affidavit to the motion for reconsideration does not mean that his testimony is "in the record" of the preliminary injunction hearing. He was not called as a witness to testify, be cross-examined, and permit the Court to ask him questions. His affidavit was not proffered as evidence, was not admitted into evidence, and was not subject to objections. It is not "evidence." Thus, the alleged facts to be offered by Dr. Olsen were not "overlooked": it was waived by the

8

choice not to call him as a witness.  A clear strategic decision was made to present a different argument and different evidence to the PTAB than to this Court.

  Defendants surely had sound tactical reasons to challenge Plaintiff's patents via six separate *inter partes* petitions based on a variety of prior art that they chose not to rely on to oppose the preliminary injunction. Defendants' arguments persuaded the PTAB to initiate review and they deserve plaudits for such legal acumen.  But, while this Court now takes due notice of the fact that the PTAB procedurally initiated an IPR, it does not take notice of the underlying facts stated in the briefing to the PTAB.  This Court has been given no evidence upon which to base a ruling when that evidence and theory was waived and/or disclaimed for purposes of the preliminary injunction motion.  And those purported facts have not yet been challenged in the adversarial proceeding that has yet to occur before the PTAB.  Their preliminary ruling is just that: preliminary.  That judicial body has not yet rendered a decision on any claim, and the PTAB is entitled to have a trial and render a ruling once it has seen the actual evidence.

  In sum, a strategic decision to present different evidence in federal court than in an administrative court does not entitle a party to reconsideration simply because the administrative court later initiated review based on alleged facts and argument—including argument explicitly disclaimed before this Court. *See Va. Innovation Sciences, Inc. v. Samsung Elec. Co*., 983 F. Supp. 2d 713, 766 (E.D. Va. 2014) ("To allow reconsideration of an interlocutory order based upon the subsequent decision of another adjudicative tribunal—which was driven by a different claim construction, different arguments by the parties, different evidence, and a different legal standard—would remove all considerations of finality and consistency by allowing parties to challenge a court's ruling whenever that party identifies, in hindsight, an improved legal

9

argument."). This principle is firmly established by the Federal Circuit.[2] *See Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1369 (Fed. Cir. 2014) ("An argument made for the first time in a motion for reconsideration comes too late and is ordinarily deemed waived. Indeed, new arguments are beyond the scope of a motion for reconsideration."). Because Defendants' asserted evidence of invalidity was previously available and reliance upon it was specifically disclaimed and waived for purposes of the motion for preliminary injunction, reconsideration is not warranted.

For the foregoing reasons, reconsideration is **DENIED**.

**IT IS SO ORDERED**

**/s/ Faith S. Hochberg**
**Hon. Faith S. Hochberg, U.S.D.J.**

---

[2] Regarding Defendants' other alleged basis for reconsideration, the Court originally considered Defendants' evidence of additional safety testing of the Narda systems. It was not overlooked.